Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 3509 | **DATE** | 1/6/2005 |
| **CASE TITLE** | PLIANT CORP. vs. MSC MARKETING | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order regarding indispensable party.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 1 0 2005 | |
| ✓ | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | rbf | 33 |
| | Copy to judge/magistrate judge. | | docketing deputy initials | |
| DW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |



**DOCKETED**

**JAN 1 0 2005**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| | |
|---|---|
| PLIANT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MSC MARKETING & TECHNOLOGY, INC. d/b/a SIGMA STRETCH FILM and ATLANTIS PLASTICS, INC.,<br><br>Defendants. | No. 04 C 3509<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Pliant is suing over alleged infringement of a patent concerning stretch film ("the '393 patent"). Pliant owns the '393 patent by virtue of an assignment of rights by Saltech Inc. (a Canadian company), the once and perhaps future owner of the patent.[1] While I eliminate some details, the essential facts of the case as it now stands are that Pliant was originally an exclusive licensee, not an owner, of the patent. However, Pliant had the right to sell the patented product and to lease equipment to make the patented product. At some point Pliant and Saltech realized that this arrangement may have left Pliant, acting alone, unable to sue infringers since it did not own the patent. The parties subsequently amended the agreement to change the grant of a license into a grant of "all right, title and interest in the Patent" to Pliant by Saltech.

Saltech's grant of patent ownership was not unconditional: it contained two fairly typical provisos. First, if Pliant did not pay what it promised for the rights, Saltech could take the patent

---

[1]It is too difficult to resist noting the analogy to the words T. H. White told us were found on Arthur's tomb: *Hic iacet Arthurus rex quondam, rexque futurus.* Here, of course, the inscription would read: *Saltech possessor quondam, possessorque futurus.*



back if it chose. Second, Saltech had the right to take the patent back if Pliant "enters into liquidation, whether compulsory or voluntarily, becomes bankrupt or has a receiver appointed of all or any part of its business, or becomes insolvent, or makes an arrangement with its creditors or takes or suffers any similar action in consequence of debt." This insolvency language is typically included in contracts for the sale of patent rights, as the seller has little desire to see its patent become part of a bankruptcy estate. Once there, it might be disposed of by the trustee in a manner inimical to the original patent owner's interests, *e.g.*, to one who will not exploit the patent or to another who might use it in the marketplace against the original seller.

The fact that a seller has the right to take the patent back subject to conditions of payment does not deprive the buyer of the right to enforce the patent as its owner even though it might cease to be an owner for failure to pay for the patent. That principle was established in *Waterman v. Mackenzie*, 138 U.S. 252 (1891), although *Waterman* may have involved a transaction originally designed either to keep the patent for a fountain pen out of the hands of creditors, or to ensure passage of the rights down through Waterman's family. Furthermore, a seller's right to take back the patent in the event of bankruptcy is not a reservation of rights so substantial as to defeat the claim of the buyer to ownership of the patent. *Vaupel Textilmaschinen KG v. Meccanica Euro Italia, S.P.A.*, 944 F.2d 870, 874-76 (Fed. Cir. 1991) (holding that an exclusive license, granting the licensor a reversionary interest in the patent in the event of the licensee's bankruptcy, was a grant of "all substantial rights" such that the licensee could sue for patent infringement). This clear law prevents Defendants from claiming that Pliant has no right to enforce the patent. Indeed, Pliant might have had the power to enforce it simply as an exclusive licensee before the agreement between it and Saltech was amended.

2

Rather, Defendants have urged for the dismissal of Pliant's suit for failure to join Saltech as an indispensable party. Defendants' argument follows a different line, based on *Independent Wireless Tel. Co. v. Radio Corp. of America*, 269 U.S. 459 (1926), which held in the case before it that the patent owner was an indispensable party that had to be joined in order to confer standing to sue. The holding of *Independent Wireless* became the original Rule 19 of the *Federal Rules of Civil Procedure*. Therefore, it is important that Pliant is an owner of the '393 patent, which both Pliant and Saltech realized when they amended their agreement in 2004. That fact is vitally important here, because I assume for now that Saltech is a party which, without its consent, may not be amenable to process. If an indispensable party cannot be joined, then the whole case must be dismissed. *Fed. R. Civ. P. 19(b)*.

There is little precedent on this point in Rule 19 cases. In 2000, and in what might be deemed an alternative holding (or even dicta), the Federal Court of Appeals applied the *Vaupel* rule and found that a reversionary right triggered by the condition of bankruptcy did not make the holder of that right an indispensable party. *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1378-79 (Fed. Cir. 2000). Similarly, the court said that vesting discretion in the patent seller to take back the rights on one-year anniversaries of the original grant did not make the seller an indispensable party. *Id.* This aspect of the opinion must not be overstated, as the court ultimately held that the patent owner did not transfer all of the substantial rights in the patent to the plaintiff; rather, it transferred only the right to license the patent to one specific (sub)licensee. *Id.* at 1379-80. While the case was decided in the context of a Rule 19 dispute, the decision rested on the fact that none of the named plaintiffs had rights of ownership that created standing to sue.

3

Alternatively, in one case requiring Rule 19 joinder of the holder of a reversionary right, the reversionary right was triggered upon the expiration of an agreement transferring all of the substantial rights of the patent. *Moore U.S.A. Inc. v. Standard Register Co.*, 60 F. Supp. 2d 104 (W.D.N.Y. 1999) (holding that the assignor of a patent retained substantial rights in the patent and must be added as an indispensable party). In *Moore*, any extension of the agreement required a new written agreement to extend between the parties. Judge Curtin found the case "distinguishable from *Vaupel* . . . the five year exclusive license . . . is finite and not for the life of the patent. In contrast, the reversionary interest in *Vaupel* was triggered only in the case of bankruptcy, which might have never occurred." *Id.* at 110.

Thus far, this opinion has focused on a rather formal analysis of what constitutes patent ownership vis-a-vis patent enforcement. However, in support of their argument for dismissal of the case, Defendants also raise matters of policy (as does Rule 19 and the cases that interpret it.) "[O]ne of the underlying policies of the rule of *Independent Wireless* is to prevent duplicative litigation against a single accused infringer." *Prima Tek II*, 222 F.3d at 1381. Similarly, the Court of Appeals for the Sixth Circuit observed that "[e]ven though the [unjoined] owners might be bound under traditional doctrines of collateral estoppel or res judicata, and despite the fact that such a repetitive suit may be an appropriate case for the awarding of attorney fees to defendants[,] defendants still could be prejudiced . . . [Rule 19] was modified in 1966 to deal with problems of this nature." *Willingham v. Lawton*, 555 F.2d 1340, 1345 (6th Cir. 1977) (requiring the continued joinder of the patent owner as an involuntary plaintiff).

On the other hand, Judge Aspen denied a motion to dismiss for failure to join an indispensable party in a case much like this one. *Shima American Corp. v. S.M. Arnold, Inc.*,

4

1989 WL 65014 (N.D. Ill. 1989). In that case, a Japanese company owned a trademark on a container for its product. *Id.* at *1. By agreement, its U.S.-based distributor Shima received all interest in the mark as long as Shima remained the exclusive sales agent for the Japanese company. *Id.* In the event that the contingency was triggered, the trademark would revert to the Japanese company; the company could invoke that interest by ending Shima's status as exclusive agent. The court noted that trademark law (like patent law) accords standing to sue even if there is some possibility of reversion. *Id.* at *2. Judge Aspen recognized that if reversion occurred, the Japanese company would become indispensable; however two facts weighed against the need for its presence in the case prior to any reversion. *Id.*

First, the Japanese company had agreed to be bound by the results in the ongoing case. *Id.* That fact is of no significance in this case, because Saltech has not so agreed and because the Federal Circuit is quite firm on its rule that agreements between parties do not eliminate the requirement that suits be brought by patentees. *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1034 (Fed. Cir. 1995). The second fact is that judgments against a transferor of property are binding on the transferee so long as the transfer occurs after the suit is pending and the transferee is aware of the suit. *Shima*, 1989 WL at *2. This concept is similar to the observation about collateral estoppel found in *Willingham, supra.*

As I read the cases, two basic principles emerge. First, the reversionary interest held by an assignor if the assignee goes bankrupt or becomes insolvent does not render the assignor an indispensable party. Second, if the assignee loses its patent case in this court, the assignor is bound by the result. However, I am concerned that these two principles do not address all of the issues raised by the litigation pending before me.

5

None of the opinions discussed above appear to involve a party like Saltech, whose assignee Pliant is a publicly held company whose financial status is public knowledge. Defendants tendered evidence suggesting that Pliant's most recent 10-Q shows assets of $768 million but liabilities of $1.252 billion. Defendants offered this information in order to suggest that Saltech has the present right to claim its reversionary interest in the patent. I do not now have enough information to determine whether Pliant's financial status satisfies the reversionary condition outlined in the amended agreement assigning rights to it. Rather than make this determination, I assume (for the purpose of this ruling only) that Saltech could presently take back its rights to the patent. When this is assumed, I no longer confront a case in which the reversion contingency might never occur; rather, it has occurred. One of the primary considerations in *Vaupel* – the idea that the reversionary interest may not ever become a real interest – is of no relevance here. *Cf. Moore*, 60 F. Supp. 2d at 109-10 (in which Judge Curtin ruled as he did, in part, because the reversionary interest was likely to vest during the time of the proceedings).

Another issue, unmentioned in the precedents, is that the binding nature of a judgment on the reversionary interest holder may sometimes have little practical significance in the current world of patent litigation. At the time *Vaupel* was decided, the Federal Circuit was roughly four years away from *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), *aff'd* 517 U.S. 370 (1996). Prior to *Markman*, when juries interpreted patents, the crucial decisions were reached at the end of the case. This was largely true in bench trials as well. Today the *Markman* ruling is typically issued early in the case, well before trial. *Markman* rulings, therefore, have a profound effect on issues of infringement and many issues of validity. This means that a patent

infringement plaintiff knows early in the case if things are going well or badly. The early ruling gives the plaintiff a chance to pull out of the case before any judgment might bind it. This is a potential problem for defendants in any patent case, but counterclaims against the patentee may effectively stop its ability to start over in another court. This balance, present in the common case, is absent when the ownership of the patent changes mid-stream. The person to whom ownership of the patent reverts, if not a party, is not constrained by these counter-claims. Indeed, the reversionary owner need not even pull the case out of court – it could let the case die of its own accord for want of a proper plaintiff.

That situation would play out in the present case as follows. If Saltech could invoke its right to take the patent back (as I assume it can), it could choose not to do so, in order to wait and see how I interpret the claim. If it regards my *Markman* ruling as a disaster, it could then take the patent back. In that situation, the present patent case would be dead, and my ruling would not be binding on any of the relevant parties. I have found no precedent that deals with this situation; that is, an assignor who has the present right to own the patent if it chooses and yet allows its assignee to proceed with an infringement case. I recognize that in these circumstances there is a substantial potential for abuse.

These concerns – Saltech's presumed present interest in the patent, and its ability to end the litigation before a contrary result is reached – could lead me to conclude that Saltech is an indispensable party, so as to pre-empt the potential abuse outlined above. Were I free to reach this conclusion, I might. However, I am not free to do so. The Federal Circuit has adopted a clear principle that reversionary interests do not prevent the assignee from suing as patentee. *Vaupel*, 944 F.2d at 875-76. In addition to the considered holding of *Vaupel* on this point, I must

7

also consider the clear reaffirmation of the rule in *Prima Tek II*, in which the Federal Circuit did not need to reach the issue, but did so nonetheless. 222 F.3d at 1378-80. These cases establish clear Circuit policy. A simple, clear rule which sets forth the precise interests that constitute an assignee's "ownership" of a patent, and those which cannot be retained by the assignor, may be the best doctrine, even if the rule is a little over-inclusive.[2] This is the policy of the Federal Circuit and I am obliged to follow it. Further, I do not perceive the unique leverage accorded Saltech in this case as a problem of epidemic proportions. Therefore, I must conclude that Saltech is not an indispensable party.[3]

For these reasons, the case will move forward without adding Saltech as a party to the litigation. However, this decision is made without prejudice to a formal motion by Defendants to find Saltech an indispensable party at some later date, should it become necessary.

ENTER:

James B. Zagel
United States District Judge

DATE: 6/6/2005

---

[2]*See, e.g., Inter-Coastal Xpress v. United States*, 296 F.3d 1357, 1367 (Fed. Cir. 2002) ("[t]he more mechanical the application of a jurisdictional rule, the better. The chief and often the only virtue of a jurisdictional rule is clarity") (quoting *In re Kilgus*, 811 F.2d 1112, 1117 (7th Cir. 1987)).

[3]I reiterate that in considering this issue, I have assumed facts (which may be untrue) that present the strongest case for Defendants – specifically, that Saltech has a present right to take back its patent. That assumption notwithstanding, I conclude that the case can proceed without adding Saltech.

8